DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal from the Lucas County Court of Common Pleas is actually the result of four notices of appeal, three judgments, three cases that were eventually consolidated in the trial court, two parties, one jury verdict and one accident and the combined efforts of five lawyers.
 {¶ 2} We say this not to make light of what happened to the parties, but to point out the seemingly inconsistent and schizophrenic pleadings which we must reconcile before we can address the merits of the appeal(s).
 {¶ 3} On Friday, March 22, 2002, 17 year old Heather Jacobs discovered that she needed a ride home from school. She called her friend, 16 year old Brian McAllister. He agreed to help.
 {¶ 4} After school, Brian picked up Heather and her 15 year old friend, Melanie Keister, at Toledo Start High School. Heather asked Brian if he could first take her to the shopping center where she worked so that she could pick up her pay. He agreed.
 {¶ 5} From the shopping center, Heather directed Brian to turn north onto Middlesex Avenue. Both Heather and Melanie later testified that until this time the three had been listening to music on the radio and singing along. Heather and Melanie agreed that Brian was driving cautiously.
 {¶ 6} At this point, the accounts of the incident diverge. The result, however, is uncontested: the car swerved to the right, left the street and struck a tree. Both Brian and Heather were seriously injured; both comatose for several days.
 {¶ 7} Heather claims no memory of the accident itself. Her last recollection is turning onto Middlesex. Melanie, who was in the backseat, said that Brian began driving slightly above the 25 m.p.h. speed limit after he turned onto Middlesex. He then swerved into the tree. Brian's report is at odds with this. According to Brian, when he turned onto Middlesex, Heather began urging him to go faster, eventually putting her foot over his on the accelerator and pressing down. Heather's interference with his driving, Brian insists, was the cause of the accident.
 {¶ 8} On August 13, 2002, Heather Jacobs, through her parents, Edward and Irene Jacobs, sued Brian McAllister, alleging that his negligence resulted in her injury. Heather's parents joined the suit in a loss of consortium claim.
 {¶ 9} Brian denied negligence and, on September 11, 2002, through his mother, Barbara McAllister, sued Heather, alleging that her interference with his driving was the real cause of the accident and his resulting injury. Brian's parents, Gary and Barbara McAllister, joined the suit with a loss of consortium claim. On January 7, 2003, Melanie Keister initiated her own suit against Brian McAllister. These three cases were eventually consolidated, but Melanie Keister dismissed her claim prior to trial.
 {¶ 10} In her initial complaint, Heather Jacobs was represented by Attorney Jerome Phillips. In his answer to this complaint, Brian McAllister was represented by Attorney Marc J. Meister. Brian McAllister's counsel on his countersuit was Attorney James D. Caruso. Heather Jacobs' counsel for her answer was attorney Mark J. Metusalem. Attorney Sarah McHugh later also entered an appearance on behalf of Jacobs.
 {¶ 11} On November 11, 2004, the matter proceeded to a trial before a jury. At the conclusion of the trial, the parties agreed to submit the matter to the jury by way of interrogatories. The court would then enter judgment in conformity with those interrogatories.
 {¶ 12} Three interrogatories were submitted to the jury:
 {¶ 13} "A. `Was Brian McAllister negligent and did that negligence directly and proximately cause or contribute to the accident?' [B.] `Was Heather Jacobs negligent, and did that negligence directly and proximately cause or contribute to the accident?' [and C.] `State the percentages of negligence that directly and proximately caused the accident.'"
 {¶ 14} After the jury retired, it was discovered that the interrogatories actually submitted were not those referred to in the jury charge, but an earlier erroneous version in which the jury had only to determine whether the defendant was negligent. With the consent of counsel, the trial judge entered the jury room with the proper interrogatories.
 {¶ 15} In the jury room, after the judge explained the confusion with the interrogatory forms, one of the jurors asked him if they could find no one negligent. The judge responded that, given that each party bore the burden of proof that the other was negligent, the jury could find that neither party met their burden of proof. The judge told the jury that if they returned no negligence findings for both parties, he would conclude that they had found that neither side had met their burden. The jury returned interrogatories finding no negligence for either party.
 {¶ 16} On December 7, 2004, Attorney Caruso, on behalf of Brian McAllister, and Attorneys Phillips and McHugh, on behalf of Heather Jacobs, interposed a joint motion for a new trial. These counsel argued that the trial judge's jury room discussion constituted an irregularity in the proceedings, the verdict was against the manifest weight of the evidence, the judgment was contrary to law, and the error was called to the court's attention before proceedings concluded. On December 14, 2004, the court entered judgment on the verdict. On December 22, 2004, Attorney Meister, on behalf of Brian McAllister, filed a memorandum in opposition to the joint motion for a new trial. The trial court entered its judgment granting only plaintiff Jacobs a new trial. The trial court then entered a nunc pro tunc order granting a new trial to both plaintiff Jacobs and plaintiff McAllister. Plaintiff McAllister, through attorney Caruso, filed his appeal of the December 14, 2004 judgment on the verdict. Through attorney McHugh, plaintiff Jacobs filed her appeal of the December 14, 2004 judgment on the verdict. Defendant McAllister, through attorney Meister, filed a notice of appeal of the judgment granting a new trial to Jacobs only. Defendant Jacobs, through attorney Metusalem, filed an appeal asking for reversal of the granting of the nunc pro tunc judgment, if defendant McAllister's appeal from the trial court's granting plaintiff Jacobs' motion for a new is found well-taken. This court consolidated all three appeals.
 {¶ 17} Brian McAllister has advanced two mutually inconsistent positions in the same matter. The Brian McAllister, represented by Attorney Caruso, is apparently dissatisfied with the verdict of no liability for any party, as was Heather Jacobs, and moved for a new trial. The Brian McAllister represented by Attorney Meister is apparently satisfied to have avoided liability and opposes a new trial.
 {¶ 18} We are compelled to unravel this tangle of interests and parties to clearly address the matters presented for appeal. And while we understand the reasons for the duality of McAllister's two, apparently mutually inconsistent positions in the same matter, we are nonetheless bothered by them. The confusion and conflict engendered here was epitomized by the spectacle of the attorneys trying to sort out the seating arrangements at oral argument. We feel constrained to resolve this conflict before moving to the merits of the case.
 {¶ 19} It is fundamental that an appeal lies only on behalf of an aggrieved party. GMAC Mortgage Co. v. Lewis, 10th Dist. No. 05AP-284, 2005-Ohio-5165, at ¶ 6, citing Ohio ContractCarriers Assoc., Inc. v. Public Util. Comm. (1942),140 Ohio St. 160, syllabus. It has long been held that standing to appeal is accorded only to a party who has been adversely affected by the judgment or order challenged. Midwest Fireworks Mfg. Co. v.Deerfield Twp. Bd. of Zoning App. (2001), 91 Ohio St.3d 174,177; Binns v. Smith (1937), 26 Ohio Law Abs. 225.
 {¶ 20} McAllister's position as advanced by Attorney Caruso, is that he is not aggrieved by the eventual granting of a new trial to both McAllister and Jacobs (the nunc pro tunc) and, therefore, lacks standing to appeal this order. In such a circumstance, the order stands and the parties' arguments with respect to the judgment on the verdict are moot as a new trial will presumably cure any error from the original proceeding.
 {¶ 21} McAllister's position as represented by Attorney Meister, is that we should proceed to arguments relating to the propriety of a new trial. Only if we find the new trial order improper would we reach the parties' arguments relating to the judgment on the verdict.
 {¶ 22} We have found only one case similar to this. InScigliano v. The Hartford Ins. Group (Pa.C.P. 1984), 30 Pa.D.C.3d 239, 1984 WL 232, a customer sued Roscoe Scigliano d/b/a Penn Paving Company for damages alleged in an excavation project. Penn Paving in turn sued its insurer for reimbursement. In the suit against the insurer, Penn Paving was represented by Attorney John Tumolo. In the suit by the customer, Penn Paving was defended by a law firm not affiliated with Tumolo. When Tumolo, on behalf of Penn Paving, filed a motion to consolidate the cases, the law firm representing Penn Paving in the other action opposed consolidation. The court, however, refused to rule on the motion as long as Penn Paving was opposing its own motion. The court explained:
 {¶ 23} "In both actions, counsel has an ethical obligation to represent Penn Paving's interests as expressed by the client. This has not occurred in this case, because the positions taken by counsel on behalf of Penn Paving are totally inconsistent. While it may be more beneficial to Penn Paving as plaintiff in the [insurance action] to have the actions consolidated and as the defendant in the [negligence action] to have the cases tried separately, the question is what position, in the judgment of Penn Paving, will advance its overall interests.
 {¶ 24} "Counsel must be guided by the client's decision. See Ethical Consideration 7-7 which provides that `the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on his lawyer' and Ethical Consideration 7-8 which provides that `[a] lawyer should exercise his best efforts to insure that decisions of his client are made only after the client has been informed of relevant considerations.'" (Citations omitted.) Id. at 240-241.
 {¶ 25} If we apply the Pennsylvania model, when the trial court found counsel for the same client taking antithetical positions on the same issue, it should have deferred action until it ascertained which of these competing positions represented that of the client.
 {¶ 26} The ethical considerations quoted by the Pennsylvania court are identical to those found in EC 7-7 and 7-8 in the Ohio Rules of Professional Responsibility and materially the same as Rule 1.2 in the proposed Ohio Rules of Professional Conduct, which is a modified version of the Model Rules of Professional Conduct promulgated by the American Bar Association. If adopted, Rule 1.2 in the proposed rules becomes mandatory, not merely advisory, as EC 7-7 and 7-8. Further, the Restatement of the Law 3d, Law Governing Lawyers, (2000) Section 22 (1), states "As between client and lawyer, * * * the following and comparable decisions are reserved to the client except when the client has validly authorized the lawyer to make the particular decision: whether and on what terms to settle a claim * * *" Section 22, Comment d likens the decision to appeal to a decision to settle.
 {¶ 27} We agree that each attorney has an ethical obligation to represent Brian McAllister's interests as expressed by the client. We cannot say that the attorneys, acting in their independent roles, are incorrect in the positions that they take on behalf of their mutual client. But we do not place the burden on the client to elect which course to take, or which position to promote, where he would thereby be forced to abandon either his defense or his pursuit of a claim where he has sustained serious physical injuries and may be found responsible for causing serious physical injuries of another person. Further, there is also a duality in the postures of the two counsel for Heather Jacobs, although not apparently as inconsistent as McAllister's. We decline to adopt the Pennsylvania court's reasoning in this case. Although inconsistent, the positions of the parties are at least now, sorted out. We find no ethical conflict exists.
 {¶ 28} We can now address the four assignments of error set forth by appellant McAllister, through attorney Meister:
 {¶ 29} "ASSIGNMENT OF ERROR NO. 1
 {¶ 30} "This case should be remanded to the trial court because the trial court failed to specify the grounds upon which it granted a new trial as required by Civ.R. 59(A).
 {¶ 31} "ASSIGNMENT OF ERROR NO. 2
 {¶ 32} "The trial court committed reversible error in granting a new trial in favor of plaintiff Heather Jacobs since there was no irregularity in the trial proceedings where the jury found that neither Heather Jacobs nor Brian McAllister sustained her or his respective burden of proof.
 {¶ 33} "ASSIGNMENT OF ERROR NO. 3
 {¶ 34} "The trial court committed reversible error in granting a new trial in favor of plaintiff Heather Jacobs since the jury's answers to interrogatories, as reduced to judgment, were sustained by the manifest weight of the evidence.
 {¶ 35} "ASSIGNMENT OF ERROR NO. 4
 {¶ 36} "The trial court committed reversible error in granting plaintiff Heather Jacobs a new trial since there was no error of law in the conduct of the trial."
 {¶ 37} In his first assignment of error, appellant McAllister maintains that this matter must be remanded to the trial so that the court may fully comply with the dictates of Civ.R. 59(A). In material part, Civ.R. 59(A) provides:
 {¶ 38} "(A) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 {¶ 39} "(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
 {¶ 40} "(2) Misconduct of the jury or prevailing party;
 {¶ 41} "(3) Accident or surprise which ordinary prudence could not have guarded against;
 {¶ 42} "* * *
 {¶ 43} "(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
 {¶ 44} "(7) The judgment is contrary to law;
 {¶ 45} "* * *
 {¶ 46} "(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.
 {¶ 47} "In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown.
 {¶ 48} "When a new trial is granted, the court shall specifyin writing the grounds upon which such new trial is granted. * * *" (Emphasis added.)
 {¶ 49} In its original entry granting the motion, the trial court said no more than, "The court finds the Motion for a New Trial well-taken and it is GRANTED." In a subsequent nunc pro tunc entry, the court added "For good cause shown[.]" Appellant McAllister insists, citing Antal v. Olde Worlde Products,Inc. (1984), 9 Ohio St.3d 144, syllabus, that these are mere conclusory statements, the type of which have been held to be inadequate to satisfy the rule.
 {¶ 50} Appellee Jacobs responds that the words "well-taken" and "for good cause shown" were intended by the court to integrate by reference the arguments advanced in her motion for a new trial. Moreover, appellee Jacobs argues, Antal dealt with a new trial founded upon an assertion that the verdict was against the manifest weight of the evidence and should be limited to requiring reasons for that ground alone. Manifest weight was only one of four arguments set forth as a basis for a new trial in this matter; therefore, according to appellee Jacobs, there are still three possible reason by which the court's decision could be affirmed. "The trial court must specify in writing the causes for which a new trial is granted." Price v. McCoy Sales andServ., Inc. (1965), 2 Ohio St.2d 131, paragraph two of the syllabus (interpreting former R.C. 2321.17 which was the basis for Civ. R. 59. Staff Notes, Civ.R. 59); Jiminez v. Ramos
(1985), 25 Ohio App.3d 58, 59. Although Antal referred only to a weight of the evidence context, the application of the rule and its predecessors to the other grounds for granting a new trial and the language of the rule itself indicate that the rule requires more. In granting a new trial pursuant to Civ.R. 59(A), the court should state not only the ground under the rule but "specifically state" the basis for granting a new trial.Antal, supra, at 145. The purpose of this requirement is to facilitate review of the decision. Id. at 146.
 {¶ 51} In the present matter, the court states no ground at all in its first order and only summarily cites the "good cause shown" catch-all provision in the nunc pro tunc entry. In our view, this fails to meet the specificity requirement of the rule. Accordingly, appellant McAllister's first assignment of error is well-taken. Since this determination demands that we vacate the order for a new trial and remand the matter to the trial court to amend its entry, the remainder of appellant's assignments of error, as well as appellee's assignments of error are not yet ripe for consideration.
 {¶ 52} On consideration, the judgment of the Lucas County Court of Common Pleas, granting a motion for a new trial, is vacated. This matter is remanded to said court for further proceedings consistent with this decision. Appellee Jacobs is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT VACATED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Singer, P.J., Skow, J., Parish, J., concur.