LEVIAS, APPELLEE AND CROSS-APPELLANT, *v.* UNITED AIRLINES ET AL., APPELLANTS AND CROSS-APPELLEES.

(No. 49503—Decided October 15, 1985.)

*Friedman & Chenette, Jeffrey H. Friedman* and *Frank A. Chenette,* for appellee and cross-appellant.

*Gallagher, Sharp, Fulton & Norman, Alton L. Stephens* and *James N. Kline,* for appellants and cross-appellees.

MARKUS, P.J. The plaintiff flight attendant recovered a judgment against the airline that employed her, its medical flight examiner, and its flight attendant supervisor. She claimed that the defendants invaded her privacy by disclosing her confidential medical data. The jury's verdict granted the flight attendant $14,000 compensatory damages and $20,000 punitive damages. The defendants then filed motions for a judgment notwithstanding the verdict or for a new trial. The court initially denied those defense motions, but shortly thereafter vacated that entry, and subsequently granted the motions partially by disallowing recovery for punitive damages.

All parties appeal. The plaintiff appeals from the order which vacated the denial of the defense motions, and the ultimate order which precluded her recovery for punitive damages. The defendants appeal from the original judgment and rulings which preceded it, and from the ultimate order denying the balance of their post-judgment motions. To the extent that we have jurisdiction to review those disputed matters, we affirm.

I

Each side has moved to dismiss the adversary's appeal as jurisdictionally tardy. The parties implicitly agree that the original entry confirming the jury's verdict constituted a judgment. If not, there was no judgment until the court

finally granted a judgment notwithstanding a partially contrary verdict. If so, the defendants' timely post-verdict motions suspended the finality of that judgment and extended the time to challenge it by an appeal. App. R. 4(A); *Winters* v. *Beitler* (1980), 67 Ohio App. 2d 163 [21 O.O.3d 459].

The flight attendant argues that the court's denial of those motions reestablished the judgment's finality and precluded any reconsideration of the judgment or those motions. Cf. *Pitts* v. *Dept. of Transportation* (1981), 67 Ohio St. 2d 378 [21 O.O.3d 238]; *LaCavera* v. *Cleveland Elec. Illum. Co.* (Feb. 21, 1985), Cuyahoga App. No. 48679, unreported; *Howard* v. *East Ohio Gas Co.* (Mar. 21, 1985), Cuyahoga App. No. 48725, unreported.

Thus, the flight attendant claims that the defendants' failure to appeal within thirty days after the initial denial of their motions bars any review of the judgment or that ruling. If nothing further had transpired, we might well agree. However, the court vacated its ruling on the defense post-judgment motions, and no party appealed from that ruling. An order vacating the finality of a judgment is appealable, just as an order establishing its finality. Cf. *Price* v. *McCoy Sales & Service, Inc.* (1965), 2 Ohio St. 2d 131 [31 O.O.2d 229]; *GTE Automatic Electric* v. *ARC Industries* (1976), 47 Ohio St. 2d 146 [1 O.O.3d 86]; *Colley* v. *Bazell* (1980), 64 Ohio St. 2d 243 [18 O.O.3d 442].

The trial court probably erred by vacating its initial ruling on the post-judgment motions, because it had no authority to reconsider a final judgment. However, this court lacks jurisdiction to determine the propriety of that order, since neither party filed a timely appeal from that ruling. Without a timely appeal from that order, it was effective. Cf. *North Coast Cookies, Inc.* v. *Sweet Temptations, Inc.* (1984), 16 Ohio App. 3d 342, 345; *Wallace* v. *Feador* (May 17,

1983), Cuyahoga App. No. 45325, unreported; *Griswold Institute* v. *Porter* (June 1, 1983), Cuyahoga App. No. 45625, unreported.

Hence, we limit our review to the ultimate ruling on defendants' post-judgment motions, and the original judgment whose finality was suspended by those motions. The appeal and cross-appeal were timely after the final ruling which partially granted and partially denied the defendants' post-judgment motions. Therefore, we overrule both motions to dismiss the respective appeals.

## II

The defendants' first assigned error challenges the trial court's jurisdiction:

"A. The court below erred by denying the defendants' motion for summary judgment based on the Railway Labor Act, 45, U.S.C. Sec. 151, et seq., which requires disputes between an air carrier and its employee to be resolved under the collective bargaining agreement prior to the commencement of a civil action in state court."

The defendants rely on federal statutes which require private and governmental mediation or arbitration for disputes about "rates of pay, rules, or working conditions." Sections 151a and 152, Title 45, U.S. Code. This common-law action for invasion of privacy seeks money damages rather than an adjustment in working terms or conditions. The plaintiff retained her previous position as a flight attendant with no requested change of working conditions related to the present controversy. Although the flight attendant's complaint originally asserted a cause of action premised on the employment agreement, the court submitted no such claim to the jury.

Rather, the employment agreement served only to buttress the flight attendant's claim that her personal medical data was confidential. One section of

that agreement assured her that the airline and its medical examiner would not disclose that medical information without her consent. However, she could reasonably expect the medical examiner to treat her highly personal medical information as confidential, even without a contract or physician-patient relationship. Cf. R.C. 4731.22(A)(4) ("willfully betraying a professional secret" as grounds for physician discipline); R.C. Chapter 1347 (regulation and liability for disclosure of "personal information" by governmental boards and agencies); *Wagenheim* v. *Alexander Grant & Co.* (1985), 19 Ohio App. 3d 7, 10-14 (accountant may be liable for disclosing client's confidential data, despite absence of privilege against disclosure in judicial proceedings).

The cited federal statutes do not preclude this type of state action for a common-law tort. Cf. *McGinnes* v. *Bhd. of Ry. & Steamship Clerks* (1962), 75 N.J. Super. 517, 183 A. 2d 486; *Brady* v. *Penn Central Transp. Co.* (S.D.N.Y. 1975), 406 F. Supp. 1239.

### III

The defendants' next three assigned errors dispute the sufficiency of the evidence and the court's instruction for the flight attendant's claim:

"B. The court below erred in submitting this case to the jury on plaintiff's privacy claim, or, in the alternative, in denying a new trial, because there was insufficient evidence to support such a claim.

"C. The court below erred by not granting defendants' motion for judgment notwithstanding the verdict, or in the alternative for a new trial, when the plaintiff failed to show by competent evidence a severe and debilitating emotional injury, and a causal connection between the conduct of the defendants and her alleged injuries.

"D. The court below erred in failing to direct a verdict on the issue of disclosure to plaintiff's husband, or, in the alternative, instructing the jury on this issue as requested by the defendants."

The flight attendant's evidence showed that she directed her private physicians to supply the airline's medical examiner with confidential medical information. They reported that she suffered from an iron deficiency anemia related to excessive menstrual discharge. Her private physician instructed her to refrain from dieting and to use an oral contraceptive medication which caused her to retain fluids. If she did not follow that regimen, she would be subject to dizziness in flight conditions. With that data, the medical examiner authorized a waiver of weight limits imposed for appearance regulation applicable to her employment.

The medical examiner later requested supplementary data to support her application for a continued waiver. The private physician gave him more information, including details of contemplated gynecological surgery. The flight attendant's evidence showed that she provided all this information in the belief that the medical examiner would not disclose it without her permission. The airline's collective bargaining agreement and its past practices assured her that the medical examiner received it with the same understanding.

According to the flight attendant's evidence, the medical examiner disclosed most of that information to her male flight supervisor, who had no compelling reason to know it. The flight supervisor repeatedly contacted her to discuss the details of her medical condition and its effect on her employment. Additionally, the medical examiner told the flight attendant in the presence of her appearance supervisor that she should use a different method of contraception. Finally, the medical examiner gave the flight attendant's husband a copy of her private physician's medical report.

She testified that she had not authorized the medical examiner to disclose any of that information, and that she considered it highly personal. She described her substantial emotional distress from these disclosures, including embarrassment, anxiety, headaches, and an adverse effect on her marital relations. She claimed that her emotional reaction temporarily elevated her blood pressure, causing her to take medication for that condition.

Collectively, this evidence permitted a jury to find that the defendants invaded her privacy by wrongfully disclosing confidential information. Cf. *Housh* v. *Peth* (1956), 165 Ohio St. 35 [59 O.O. 60], paragraph two of the syllabus; *Doe* v. *Roe* (1977), 93 Misc. 2d 201, 400 N.Y. Supp. 2d 668, 676; *Hammonds* v. *Aetna Cas. & Sur. Co.* (N.D. Ohio 1965), 243 F. Supp. 793, 801-802. It was sufficient to support a verdict for compensatory damages. Unlike an action for intentional or negligent infliction of emotional distress, the plaintiff need not prove a debilitating injury to recover for an invasion of her privacy. Cf. *Housh* v. *Peth, supra,* at 40, with *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, paragraph three of the syllabus. The defendants do not contest the amount of damages by their assignments of error, only the plaintiff's right to any recovery.

Consequently, the court did not err by denying the defense motions for a directed verdict or a judgment denying any recovery notwithstanding the contrary verdict. Civ. R. 50(A)(4) and (B); *Cerny* v. *Domer* (1968), 13 Ohio St. 2d 117 [42 O.O.2d 332], paragraph one of the syllabus. The court had broad discretion whether to grant a new trial. *Rohde* v. *Farmer* (1970), 23 Ohio St. 2d 82 [52 O.O.2d 376], paragraph one of the syllabus; *Verbon* v. *Pennese* (1982), 7 Ohio App. 3d 182. The defendants have not demonstrated an abuse of that discretion.

The defendants also challenge the court's jury instructions regarding disclosures to the flight attendant's husband. They argue that the medical examiner had a privilege to report the flight attendant's medical problems to her husband when he asked about them. The court gave no instructions about such a privilege, and the defense made no objection to the charge as the court gave it. The court specifically asked defense counsel, "any additions or deletions on behalf of the defendant?" Defense counsel answered, "None, your honor." Nevertheless, the defendants now complain that the court did not give its earlier proposed jury instruction on this subject:

"There is an allegation that Defendant Dr. Fennell disclosed unauthorized medical information about the Plaintiff. The law recognizes a privilege to disclose information about a person's medical condition to a spouse or employer whenever there is a danger to the person, the person's spouse or another person. The law also recognizes a privilege to report to a spouse about the patient's medical condition. Each spouse is entitled to know the existence of any disease which may have a bearing on the marital relation.

"Disclosure of medical information can also be made to a person with a legitimate interest in the patient's health. If you find that United Airlines and Mr. Delapa had legitimate interests in the Plaintiff's health as a United Airlines flight attendant, then you must find for the Defendants on this issue."

Since the defendants apparently accepted the court's charge without this proposed instruction, they may well have waived any objection to its omission. Civ. R. 51(A); *Schade* v. *Carnegie Body Co.* (1982), 70 Ohio St. 2d 207 [24 O.O.3d 316], paragraph one of the syllabus. Assuming that they have properly preserved this claimed error, the proposed instruction was not a correct statement of the applicable legal rules. The discloser has no privilege unless he has reason to believe that the recipient

has a real need to know, not mere curiosity. See Restatement of the Law 2d, Torts (1977), Sections 605 and 652(g); cf. *Knecht* v. *Vandalia Medical Center, Inc.* (1984), 14 Ohio App. 3d 129, 131.

In this case, it is doubtful that either the flight attendant's supervisors or her husband had a real need to know the disclosed data. The flight supervisor and appearance supervisor had no authority to act upon that data. They were required to rely entirely on the medical examiner's grant or denial of the requested waiver of weight limits. The flight attendant's husband faced no problem involving his own well-being or emergency care for his spouse. Cf. *MacDonald* v. *Clinger* (1982), 84 App. Div. 2d 482, 446 N.Y. Supp. 2d 801 (no privilege to disclose routine medical data to spouse). There was no reason why the medical examiner could not have sought the flight attendant's permission before disclosing any of this data to anyone.

The proposed instruction was overly broad, so the court had no duty to give it. Cf. *Presley* v. *Norwood* (1973), 36 Ohio St. 2d 29 [65 O.O.2d 129], paragraph two of the syllabus.

### IV

The defendants' final assignment complains about the court's supervision of the jury empanelment procedures:

"E. The court below erred by not granting the defendants' motion for a mistrial, which was based on the conduct of plaintiff's counsel during voir dire, which prejudiced the defendants."

Generally, the trial court has broad discretion in regulating counsel's questions to prospective jurors. *Dowd-Feder, Inc.* v. *Truesdell* (1936), 130 Ohio St. 530 [5 O.O. 179]; *Fout* v. *Holland* (App. 1956), 76 Ohio Law Abs. 144 [7 O.O.2d 21]; *State* v. *Swanson* (1984), 16 Ohio App. 3d 375. The defendants assert that the court abused its discretion by permitting plaintiff's counsel to ask jurors how they would react to specific evidence. While some courts disapprove such questions, we cannot make a general statement to cover all possible situations.

In this case, the defendants have not provided this court with a record containing any portion of the voir dire questioning by either counsel. Thus, we cannot determine what questions were asked, what objections were made, or what rulings or curative instructions the court may have given. The defendants have failed to exemplify this claimed error from the record, so we must presume that the trial court acted properly. *In re Sublett* (1959), 169 Ohio St. 19 [7 O.O.2d 487].

### V

The plaintiff flight attendant assigns the following claimed errors:

"1. The trial court erred in vacating its order entered September 28, 1984 denying defendants' motion for judgment notwithstanding the verdict, or in the alternative, for a new trial.

"2. The trial court erred in granting the defendants a judgment notwithstanding the verdict as to punitive damages because there was sufficient evidence of actual malice to permit reasonable minds to reach different conclusions."

For the reasons discussed earlier, we lack authority to consider the flight attendant's first assigned error. Her failure to appeal the disputed ruling within thirty days deprives us of jurisdiction to consider its propriety.

Her second claimed error challenges the ruling which ultimately disallowed the verdict for punitive damages. Although her complaint asserted multiple theories for recovery, her counsel made no objection when the court submitted only one of them for the jury's consideration. Her complaint alleged that the defendants (a) disclosed medical records and information "in breach of contractual and other agreements," (b) "willfully and maliciously" "publicized

private information" and "intruded upon plaintiff's privacy" in "such a manner as to outrage plaintiff and cause mental suffering, shame or humiliation," (c) "willfully and maliciously communicated certain remarks and information to persons which tended to and did hold plaintiff up to ridicule and diminish [her] esteem, good will or confidence," and (d) breached a physician's duty of confidentiality.

The jury instructions submitted only the second claim:

"The plaintiff in this case claims that the defendant United Airlines, by and through its employees, defendants Joseph Delapa and Ralph Fennell, violated plaintiff's right to privacy by disclosing information contained in plaintiff's medical file and exposing said information to third parties, and thus, as a direct and proximate cause of this violation caused plaintiff to suffer embarrassment, humiliation, loss of income and reputation.

"* * *

"The Court charges the jury that this plaintiff has a right of privacy and that the unwarranted invasion of such right * * * will entitle plaintiff to a verdict * * * and I charge you as a matter of law the plaintiff's right of privacy includes the right to be left alone, and that she has a right to order her own life in a manner that may be most agreeable to plaintiff so long as the exercise of that right does not violate the rights of others."

The court instructed the jury about compensatory damages for "mental suffering," including "embarrassment, humiliation, fright, nervousness, grief, anxiety or worry." The court then discussed punitive damages in the following jury instructions:

"Malice in law is the disposition to injure another without cause from a spirit of revenge and may be defined as a wrongful act done intentionally without just cause or excuse, or the willful doing of an injurious act without lawful excuse or purposely doing a wrongful act without justifiable excuse. * * * [I]f you find the acts complained of * * * were maliciously done * * * you may go beyond the rule of compensatory damages and award exemplary or punitive damages * * * to punish the offending defendant or defendants. * * *

"* * * Punitive damages may be awarded only where a party intentionally and with actual malice injured another without lawful justification or excuse.

"Actual malice means anger, hatred, ill will, a spirit of revenge or reckless disregard."

Plaintiff's counsel made no written request for additional instructions and did not object to the limited basis for recovery allowed by the court's jury charge. She cannot and does not now complain that the court should have allowed recovery on some other theory or by some greater measure of damages. Civ. R. 51(A). Additionally, the court's instructions are at least generally consistent with earlier decisions about punitive damages in tort cases, like an action for invasion of privacy. Cf. *Detling* v. *Chockley* (1982), 70 Ohio St. 2d 134, 136-139 [24 O.O.3d 239]; *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456, 469-473 [21 O.O.3d 285].

In this case, the evidence permitted the jury to find that (a) the airline's medical examiner disclosed the plaintiff's confidential medical data to her flight supervisor, her appearance supervisor, and her husband, and (b) the supervisor used that data to criticize her in repeated contacts. The medical examiner disclosed the flight attendant's record to her husband when he inquired why his wife had been removed from a flight. The medical examiner disclosed her condition to her flight supervisor when the supervisor inquired about her application for a waiver of weight limits.

These acts may permit recovery of compensatory damages. They do not show the requisite malice for punitive damages, particularly as the court defined "malice" for this case. They do not show hostility or a prolonged indifference to adverse consequences. Cf. *Brookridge Party Center, Inc.* v. *Fisher Foods, Inc.* (1983), 12 Ohio App. 3d 130, 131-132. Thus, the flight attendant failed to provide evidence from which a reasonable jury could find malice and award punitive damages. The trial court correctly precluded those damages by its ruling on defendants' post-judgment motion.

We overrule each of the assigned errors for the appeal and the cross-appeal to the extent that we have jurisdiction to consider them. Hence, we affirm the trial court's judgment.

*Judgment affirmed.*

PRYATEL and PATTON, JJ., concur.